UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| **IN RE OAKLAND PHYSICIANS MEDICAL CENTER, L.L.C.**<br><br>**YATINDER M. SINGHAL**,<br>Appellant,<br><br>v.<br><br>**BASIL SIMON**,<br>Appellee. | 2:19-cv-11773<br><br>HON. TERRENCE G. BERG<br><br>**ORDER AFFIRMING BANKRUPTCY COURT'S ORDER ON SUMMARY JUDGMENT** |

In this bankruptcy case, the Trustee (Plaintiff-Appellee Basil Simon) prevailed on several claims brought in an adversarial proceeding against Defendant-Appellant Yatinder M. Singhal ("Singhal"). The claims pertained to multiple transfers of monies that the Debtor, Oakland Physicians Medical Center, L.L.C., made to Singhal before Debtor filed for bankruptcy. Singhal argued the transfers were repayment of prior loans he had made to Debtor. The Trustee took the position that Singhal's advances to Debtor were capital contributions, not loans, and that Debtor was not obligated to repay the funds to Singhal. Accordingly, Trustee argued, the transfers that Debtor made to Singhal before filing for bankruptcy were fraudulent and can be avoided and recovered by Trustee. The bankruptcy court agreed with Trustee and entered summary judgment in his favor. Singhal now appeals.

1

On appeal, Singhal argues that even if the bankruptcy court was correct and Singhal's advances to Debtor were not loans—so the transfers to Singhal were fraudulent—Singhal has already repaid Debtor for the fraudulent transfers in the years preceding bankruptcy. Specifically, Singhal says that the final four advances he made to Debtor, amounting to $600,764.17, restored the Debtor to the position it would have been in had the transfers to Singhal not occurred. Accordingly, he argues, the Trustee will earn a windfall if he is permitted to recover again post-petition. Singhal claims that the avoidance and recovery of the transfers that Debtor made to Singhal violate the "single satisfaction rule" under 11 U.S.C. § 550(d), which exists to prevent a trustee from collecting more than once what has already been returned to the debtor.

However, for Singhal's appeal to have any merit, his final four advances to Debtor in the amount of $600,764.17 would have to be considered "repayments" for previous transfers. There is nothing in the record to support such a conclusion. The bankruptcy court already held that those final four payments, along with all but one of Singhal's advances to Debtor, were considered capital contributions. They were not being given to the Debtor to pay the Debtor back for monies the Debtor had paid to Singhal, they were contributions by Singhal to help the hospital continue to operate financially. Therefore, Trustee was entitled to avoid and recover each of the transfers aside from Debtor's single loan repayment.

Nothing in the record suggests Debtor has recovered what had already been returned to Debtor pre-petition. In addition, Singhal mounts the "single satisfaction" defense for the first time on appeal, so it is waived. Accordingly, for these reasons, the bankruptcy court's order will be affirmed.

## BACKGROUND

It is undisputed that Debtor was formed in 2008 to acquire the assets of Pontiac General Hospital. Debtor's members, who at the time consisted of approximately 45 physicians and McLaren Health Care ("McLaren"), invested millions of dollars into Debtor. In 2010, McLaren disassociated itself from the hospital and demanded repayment of its secured loan. The member-physicians made advances to Debtor to enable it to pay off the debt owed to McLaren and to later finance Debtor's revival.

Defendant Singhal, a practicing psychiatrist at Debtor and a member on the board of directors of Debtor, participated in making those advances. Singhal's advances to Debtor and Debtor's transfers to Singhal are listed in a chart. *See* Ex. A; ECF No. 4, PageID.348. The chart shows that Singhal advanced $2,778,764.17 to Debtor and Debtor transferred $735,884.04 to Singhal over a three-year period. *Id.*

The advances were not enough to sustain Debtor. On July 22, 2015, Debtor filed a voluntary petition under Chapter 11 of the Bankruptcy Code. The Trustee brought an adversary action against Singhal and filed

3

a motion for summary judgment to avoid and recover the $735,884.04 transferred from the Debtor to Singhal. Singhal denied the claim, asserting that all of Debtor's payments to him were repayments of loans previously advanced by Singhal to Debtor.

The bankruptcy judge held a hearing on this single issue in the companion case of *Simon v. Short*, Adv. P. No. 16-5125. Trustee and Singhal stipulated that the result of that hearing would also govern the characterization of Singhal's loans. After the hearing, the bankruptcy court held that most of the advances were capital contributions, not loans. *See* Adv. P. No. 16-5125, ECF No. 199. The bankruptcy judge then granted Trustee's motion for partial summary judgment against Singhal but held that $228,000 of the $735,884.04 sought was not recoverable because that amount alone represented repayment of a promissory note. ECF No. 3, Page ID.325. Accordingly, the bankruptcy judge entered judgment for the Trustee in the amount of $507,884. *Id.* Singhal now appeals, arguing that his final four payments in the amount of $600,764.17 satisfy the judgment. Accordingly, he claims he is absolved of liability.

## STANDARD OF REVIEW

The bankruptcy court's findings of fact are reviewed under the clearly erroneous standard. Fed. R. Bankr. P. 8013. "A finding of fact is clearly erroneous when although there is evidence to support it, the reviewing court, on the entire evidence, is left with the definite and firm

conviction that a mistake has been committed." *United States v. Mathews (In re Mathews),* 209 B.R. 218, 219 (6th Cir. BAP 1997) (internal quotations omitted). The bankruptcy court's conclusions of law are reviewed de novo. *Nuvell Credit Corp. v. Westfall (In re Westfall),* 599 F.3d 498, 501 (6th Cir.2010). This means the Court reviews the law independently and gives no deference to the conclusions of the bankruptcy court. *Myers v. IRS (In re Myers),* 216 B.R. 402, 403 (6th Cir. BAP 1998). "[I]f a question is a mixed question of law and fact, then [the reviewing court] must break it down into its constituent parts and apply the appropriate standard of review for each part." *Investors Credit Corp. v. Batie (In re Batie),* 995 F.2d 85, 88 (6th Cir.1993). *See also In re Shefa, LLC*, 535 B.R. 165, 169 (E.D. Mich. 2015).

## DISCUSSION

### A. The single satisfaction rule

Singhal argues that the bankruptcy court's holding, that Trustee was entitled to avoid and recover most all of the transfers to Singhal, violates the "single satisfaction" rule under 11 U.S.C. § 550(d). While the single satisfaction rule is "typically implicated … where a trustee seeks recovery from multiple parties, this provision has also been used to "prohibit a trustee from recovering under [s]ection 550(a) from a transferee that has already returned to the estate that which was taken in violation of the Code." *Lassman v. Patts* (*In re Patts*), 470 B.R. 234, 243 (Bankr. D. Mass. 2012) (internal quotations omitted). Singhal argues

5

that the Trustee is only entitled to one satisfaction under 11 U.S.C. §§ 550(a) and (d) and Trustee will now be able to collect twice.[1]

In support, Singhal points to the timeline of transfers that occurred between himself and Debtor, arguing that when Debtor's transfers to Singhal stopped, any subsequent payments Singhal made to Debtor amounted to a return of Debtor's earlier transfers. The chart of transfers between Debtor and Singhal reflects that Debtor's final payment to Singhal was made on July 3, 2014. *See* Ex. A. Thereafter, between August 12, 2014, and December 2, 2014, Singhal advanced a total of $600,764.17 to Debtor. *Id.* Singhal now claims that the $600,764.17 was a repayment for the previous transfers to him. Singhal says that when he "repaid" Debtor for Debtor's transfers to him his liability to Debtor should have ended.

Singhal is incorrect. The bankruptcy court properly characterized Singhal's advances as capital contributions. Singhal was not "paying the transfers back" between August 12, 2014 and December 2, 2014, rather, he was continuing to inject capital into the hospital where he was a physician and board member to help it to survive. Accordingly, the Debtor

---

[1] Plaintiff argues correctly that this argument was never raised before the bankruptcy court and was therefore waived for purposes of this appeal. But because it is the heart of Defendant's entire appeal, the Court discusses its merits here and concludes that, whether waived or not, the argument is without merit.

was entitled to keep the advances Singhal made, and as the bankruptcy court held, any transfers Debtor made to him were fraudulent.

The decisions cited by Singhal do not persuade the Court otherwise. They all stand for the proposition that certain pre-petition transfers back to a debtor are sufficient to prohibit the trustee from recovering from the transferee if those payments constitute *repayment*. Since Singhal's advances were deemed capital contributions, they are not repayment. *See e.g., Grossman v. Bonefant (In re Bonefant),* No. 12-16482-JNF, 2016 WL 1238855, at *9 (Bankr. D. Mass. Mar. 29, 2016) (finding that the trustee could not recover funds fraudulently transferred from the debtor because "[w]hile the estate was depleted by the Debtor's fraudulent transfers, the financial condition of the bankruptcy estate was restored by the pre-petition repayments of the fraudulent transfers"); *Kapila v. SunTrust Mortg. (In re Pearlman),* 515 B.R. 887, 896–97 (Bankr. M.D. Fla. 2014) (finding that "[c]ourts also use § 550(d)…when the estate already has received full repayment of the challenged transfers before the bankruptcy case was filed"); *Lassman v. Patts (In re Patts),* 470 B.R. 234, 243 (Bankr. D. Mass. 2012) ("[t]he transfer the Trustee seeks to avoid has already been undone and the undiminished value of the transferred asset has been restored to the bankruptcy estate. Accordingly, any 'recovery' for the benefit of the estate has already been completed."); *Bakst v. Wetzel (In re Kingsley),* No. 06-12096-BKC-PGH, 2007 WL 1491188, at *4 (Bankr. S.D.

7

Fla. May 17, 2007) (finding that "to the extent that the fraudulent transfer is repaid pre-petition, the claim is satisfied").

Here, Singhal was not repaying Debtor for the transfers, and by extension returning Debtor to the position it was in before the transfers occurred. Rather, he was advancing capital contributions to Debtor. Accordingly, the cited cases are not persuasive and this argument is without merit.

### B. Waiver

Moreover, as Trustee correctly argues, Singhal's defense was addressed for the first time on appeal. Accordingly, it has been waived. *See In re Collins & Aikman Corp.,* 417 B.R. 449, 457 (E.D. Mich. 2009).

Singhal disagrees; he says that while he did not specifically mention the defense until this appeal, he put the bankruptcy court on notice of the defense because he consistently argued that the transfers had been repaid in full and so the Trustee had no damages. He points to his deposition, where he testified that the transfers were repaid to the Debtor. ECF No. 3, PageID.162. In addition, he points to his response to the Trustee's motion for summary judgment, where he argued that there was a genuine issue of material fact regarding damages because he believed the transfers had been repaid. ECF No. 3, PageID.303.

However, this does not amount to raising the single satisfaction defense. An appellant must present an issue squarely before a trial court, or it is waived for purposes of appeal. *Thurman v. Yellow Freight Sys.,*

8

*Inc.*, 97 F.3d 833, 835 (6th Cir. 1996). Singhal's testimony at his deposition and his response to summary judgment regarding damages are not sufficient to have put the bankruptcy court on notice that it should consider the single satisfaction rule. *See Building Serv. Local 47 Cleaning Contractors Pension Plan v. Grandview Raceway,* 46 F.3d 1392, 1399 (6th Cir.1995) ("Vague references to an issue fail to clearly present it to the district court so as to preserve the issue for appeal.").

Singhal argues that even if the issue is waived, this Court should apply an exception and consider it nonetheless. An appellate court may consider issues not raised in the lower court "[o]nly in exceptional cases" or to avoid a "plain miscarriage of justice[.]" *Thomas M. Cooley Law Sch. v. Kurzon Strauss, LLP*, 759 F.3d 522, 528 (6th Cir. 2014). *See also Cleveland Firefighters for Fair Hiring Practices v. City of Cleveland,* 669 F.3d 737, 753 (6th Cir.2012) ("Generally, a reviewing court should not consider issues in the first instance when they were not litigated in the trial court except in exceptional circumstances.").

Factors guiding the determination of whether to consider an issue for the first time on appeal include: 1) whether the issue newly raised on appeal is a question of law, or whether it requires or necessitates a determination of facts; 2) whether the proper resolution of the new issue is clear and beyond doubt; 3) whether failure to take up the issue for the first time on appeal will result in a miscarriage of justice or a denial of substantial justice; and 4) the parties' right under our judicial system to

9

have the issues in their suit considered by both a district judge and an appellate court. *In re Cannon*, 277 F.3d 838, 848 (6th Cir. 2002).

There is no exceptional case here. Failing to consider the single satisfaction rule will not result in a miscarriage of justice. The underlying issue that Singhal now repackages as the single satisfaction defense has been litigated extensively.

The transfers from Debtor to Singhal were the basis of Trustee's "fraudulent transfer" claim. To prove the transfers were fraudulent, Trustee had to show (1) at the time the transfers were made that Debtor was insolvent and (2) Debtor received less than reasonably equivalent value in exchange for each of the transfers. The parties only disputed element two. At the hearing, the bankruptcy judge held that the advances were not loans, and therefore Debtor's transfers back to Short in the companion case (and therefore, pursuant to the stipulation, back to Singhal) were not made on account of antecedent debt:

> There is no credible evidence that the unsigned notes and alleged missing notes were ever executed. Furthermore, there is no evidence before the Court regarding the terms for these Advances. Accordingly, there is no credible evidence establishing an agreement of an unconditional promise to pay. Without an unconditional promise to pay, there is no loan. As such, Plaintiff has established that there exists no right to payment under Michigan law for these remaining Advances. With no right to payment, Defendant does not have a "claim", and in turn, no "debt" as defined under §§ 101(12) and 101(5), respectively. The transfers were not made on account of an

antecedent debt of Debtor. Therefore, Plaintiff has satisfied his burden under § 548(a)(1)(B) and M.C.L. § 566.35 and established that Debtor did not receive reasonably equivalent value in exchange for the transfers.

Adv. P. 16-5125, ECF No. 199, PageID.43. In addition, the bankruptcy judge conducted a lengthy analysis of the *Roth Steel* factors which supported the same conclusion, that the advances were not loans, but capital contributions. That opinion was discussed and affirmed by this Court. *See* Case No. 19-12101, ECF No. 21. The bankruptcy court then issued an order characterizing all but one of Singhal's payments—the sole payment that was evidenced by a signed promissory note—as capital contributions and not loans. Because Singhal's payments to Debtor were capital contributions, his argument that the Trustee would receive a windfall if he were able to avoid and recover the transfers post-petition fails.

Further, in granting summary judgment for the Trustee, the bankruptcy court rejected Singhal's argument that there were no "net fraudulent transfers", and therefore no issues of damages:

> "The Court finds that there is no genuine issue of material fact regarding damages. The parties stipulated to this Court's finding in the opinion after trial and additionally stipulated to the schedule of advances and transfers in this case. The Court incorporates its findings and reasoning in its opinion after trial. Accordingly the trustee may avoid and recover transfers in the amount of the $507,884.04. And the Court reaches that number by

11

> subtracting the amount of the loan of 228,000 from the total amount of the transfers made by the debtor of $735,884.04."

ECF No. 256-15, PageID.9. Singhal has had his chance to litigate the transfers extensively. Accordingly, the Court declines to apply an exception and allow him to present the single satisfaction defense. Moreover, as explained above, it would make no difference.

### C. Capital contributions or loans

Finally, Singhal argues that the bankruptcy court's conclusion that Singhal's advances were capital contributions and not loans is erroneous. In the companion case of *Simon v. Short*, the bankruptcy judge held, after an evidentiary hearing, that Short's advances to the Debtor were capital contributions and not loans. Adv. P. No. 16-5125, ECF No. 199. In this case, rather than proceed to an evidentiary hearing where the result would likely be the same, the parties stipulated that the bankruptcy judge's conclusion in Short's case would apply here. Singhal asks that if this Court overturns the bankruptcy court's conclusion in *Short v. Simon*, it do the same here. But because the Court affirmed the bankruptcy court's holding in *Short v. Simon*, that the advances were capital contributions and not loans, Singhal's request is denied.

## CONCLUSION

For the reasons stated above, the bankruptcy court's order is **AFFIRMED**.

Dated: July 22, 2020                    s/Terrence G. Berg
                                        TERRENCE G. BERG
                                        UNITED STATES DISTRICT JUDGE